RELIANCE LIFE INS. CO. v. BEATON.* (No. 7564.)

(Court of Civil Appeals of Texas. Dallas. June 10, 1916. Rehearing Denied July 1, 1916.)

1. INSURANCE ⊛84(1) — AGENT'S COMPENSATION.

In an action by an insurance agent on bonus contract allowing compensation upon the amount of insurance procured, the words "sixty days allowed for settlement," in the absence of testimony showing the sense in which used, held to mean a grace of 60 days after the year covered by the contract in which to allow the parties thereto to settle among themselves the volume of business which had been procured, and not to have reference to the time allowed for the collection or payment of premiums due for such business.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111, 114; Dec. Dig. ⊛84(1).]

2. INSURANCE ⊛84(1) — COMPENSATION OF AGENT — ACTION — INSURANCE AGENT — EVIDENCE.

In an action by an insurance agent on a bonus contract, based upon the amount of insurance procured during the year, evidence of plaintiff and a telegram from the company near the close of the year stating that his territory had procured $1,223,000 life insurance business

and asking for more business, held sufficient to support a finding that the business procured during the year exceeded $1,250,000.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111, 114; Dec. Dig. ⊛84(1).]

3. TRIAL ⊛356(5)—SPECIAL ISSUES—APPLICABILITY.

In an action by an insurance agent for commissions on a contract for business "procured" during the year, judgment for plaintiff upon a finding of amount of business "procured" during the year was not invalidated by refusal of the jury to answer questions submitted by defendant as to the amount of business "procured and issued" and "charged, but not paid for in cash, and issued" during the year.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 852; Dec. Dig. ⊛356(5).]

4. NEW TRIAL ⊛34—MOTION FOR CONTINUANCE—DILIGENCE.

Where, in an action by an insurance agent for bonus upon business procured during the year, the defendant had had many months to prepare its defense, and had a duplicate set of books of the agency in its home office, from which it appeared that such defense was prepared, refusal of second postponement to enable the defendant to further examine the books was not ground for new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 49; Dec. Dig. ⊛34.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Ralph A. Beaton against the Reliance Life Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther, of Dallas, for appellant. Henry P. Edwards and Cockrell, Gray & McBride, all of Dallas, for appellee.

TALBOT, J. This suit was instituted by the appellee, Beaton, against the appellant, Reliance Life Insurance Company, March 14, 1914. The controversy arises out of a written contract entered into between appellant and appellee, whereby the appellant employed the appellee for the term of one year, beginning January 1, 1913, to solicit applications for insurance on the lives of individuals personally, and to procure agents and supervise their work in what is known as appellant's "Texas-Oklahoma Department." No question is raised about the pleadings, and it is unnecessary to state or set them out. The contract sued on provided that appellee should receive for his services certain commissions and a named "cash prize," provided the business procured by the Texas-Oklahoma Department, together with appellee's personal business during the year, reached a certain specified amount. The material portions or sections of the contract involved in the suit are as follows:

"Section 23. Party of the first part agrees to allow party of the second part a cash prize of one thousand ($1,000.00) dollars provided the business procured by the Texas-Oklahoma Department, together with his personal business during the year ending December 31, 1913, amounts to seven hundred fifty thousand ($750,-

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

000.00) dollars (face value). Sixty days extra allowed for settlements.

"Section 24. In lieu of the above prize, party of the first part agrees to allow party of the second part a cash prize of two thousand ($2,000.00) dollars, provided the business procured during any year as outlined above equals one million ($1,000,000.00) dollars (face value). Sixty days allowed for settlements.

"Section 25. For each additional two hundred fifty thousand ($250,000.00) dollars of business procured during any year as outlined in sections 23 and 24, an additional cash prize of five hundred ($500.00) dollars will be allowed.

"Section 26. In volume requirements in sections 23, 24, and 25; $5,000.00 of level accident additions with weekly indemnity or $25.00 weekly indemnity health additions will count pro rata as $1,000.00 life insurance. $10,000 accidental death only will count as $1,000.00 life insurance. Term insurance will count in volume requirement toward winning the cash prizes, but no bonus will be paid on term insurance."

Appellee's contention is that the business procured by the department over which he was appointed supervisor, together with his personal business, during the year ending December 31, 1913, exceeded $1,250,000, and therefore by the terms of his contract with appellant he was entitled to the cash prize of $2,500 provided for therein and sued for in this suit. Appellant contends that the prizes named accrued to appellee under the aforesaid provisions of the contract only upon the amount of business "procured by the Texas-Oklahoma Department, together with appellee's own personal business," being settled for in cash within 60 days, and that the business thus procured and settled for for the year ending December 31, 1913, and within 60 days thereafter, amounted to the sum of $768,450 (excluding the South Texas business excepted by section 27 of the contract), whereby appellee became entitled to a prize of $1,000, which appellant admitted to be due him, offered to pay, and which amount it tendered into court, and prayed that upon it being so found that it go hence without day and recover of appellee all of its costs.

The court submitted the case to the jury upon special issues, and upon the answers thereto judgment was rendered in favor of the appellee, and the appellant perfected an appeal to this court.

[1, 2] The first issue the jury was called upon to determine was submitted to them in the following question:

"Did the business procured by the plaintiff for defendant during 1913, and for which defendant received pay during said year or within 60 days thereafter, exceed $1,250,000?"

To this question the jury answered "Yes." Appellant's first assignment of error complains of the submission of this issue, and the proposition asserted is that "it was error to submit to the jury an issue upon which there was no evidence." It will be noted that section 23 of the contract quoted above closes with the language, "Sixty days extra allowed for settlements," and section 24 with the language, "Sixty days allowed for settlements," and that section 25 provides that:

"For each additional two hundred fifty thousand ($250,000.00) dollars of business procured during any year as outlined in sections 23 and 24, an additional cash prize of five hundred ($500.00) dollars will be allowed."

The appellant admitted its liability under section 23 of the contract for $1,000 and tendered that amount into the registry of the court, but denied liability for any sum over that amount. The contention of appellant, as we understand, is that, in view of the language of the contract, "Sixty days allowed for settlements," the appellee was not entitled to recover the $2,500 sued for, even though the volume of business procured during the year 1913 exceeded the $1,250,000, unless the further fact was shown that within that year, or within 60 days thereafter, the premiums on said amount of business had been paid in cash, and that the evidence was insufficient to establish that fact. The appellant offered no oral testimony tending to show the meaning of or sense in which the language quoted was used. The appellee's contention and version of the contract is that its terms show he is entitled to the $2,500 claimed, if the business procured during the year 1913 amounts to $1,250,000, and that the language "sixty days allowed for settlements" means that a grace of 60 days after December 31, 1913, was allowed the parties to the contract in which to ascertain and settle among themselves the volume of business which had been procured, and had no reference to time allowed for the collection or payments of premiums due for such business. In appellee's construction of the contract we concur, and hold that the evidence is sufficient to show (and the jury so found) that the volume of business procured by the appellant's Texas-Oklahoma Department, together with appellee's personal business during the year 1913, exceeded $1,250,000.

But if it should be conceded that appellant's construction of the contract is correct, still we think the appellee, under the issue as submitted and the jury's answers thereto, was entitled to recover the amount awarded him. At all events the evidence was not so lacking in probative force as to warrant this court in saying, as a matter of law, there was no evidence that the premiums due for the amount of business procured by appellant's Texas-Oklahoma Department, together with appellee's personal business, for the year 1913, which exceeded $1,250,000 were not paid during said year or within 60 days thereafter. The appellee testified:

"I assumed the duties for the defendant under the terms of that contract. * * * During the year 1913 I procured in person and through my agency under the terms of that contract considerably in excess of $1,500,000 face value of the business (insurance) and turned same into the defendant. Just the figures I cannot give, because I haven't access to the books. The books and records that would show those transactions are in the Dallas office of the defendant. Under this contract every $5,000 of level accident insurance counted $1,000 life. In other words, in

accident you had to get five times as much as in life. $279,000 accident, reduced down to life, would be one-fifth of $279,000, which would be $55,800, and the $230,000 health would be divided by $25; every $100 premium would be $4,000 life. According to this letter the aggregate of the insurance stated to have been paid for at that time, computing it on that basis, would be in excess of $1,000,000 for nine months. I was throughout the year 1913 engaged exclusively in the business of representing the defendant under the terms of this contract, absolutely so every minute of my time. I kept at Dallas records of the amount of business—life insurance and insurance business—procured by me the same as they did in the home office, duplicate set of books. The cashier reported to the home office how much business had been procured by and through me. I had no management whatever of that portion of the business; that is under the cashier's supervision. The home office of the company paid the salary of that cashier. I did not pay any part of it. He was absolutely the employé of the company at that time. * * * This is a telegram from Mr. Scott, December 29th. Mr. Scott is vice president and secretary of the company, the boss of the bunch. Throughout the year he was vice president and secretary of the Reliance Life Insurance Company."

The telegram referred to in the testimony of appellee just quoted is as follows:

"Pittsburgh, Pa., December 29, 1913.

"Mr. Ralph A. Beaton, 711 Prætorian Building, Dallas, Texas: At close of business Saturday for year shows Texas, Oklahoma million two hundred twenty-three thousand life, three hundred fifty-six thousand accident and four hundred seven dollars health insurance paid for. Counting on you sure for at least two hundred seventy-seven thousand more life insurance paid for. Wire us as soon as you receive this whether or not we are going to get it. This allotment made in order to be sure that sufficient business is paid to put second automobile in contest and to break all records of company. Will keep you advised by wire how much we need to pass three and half million mark for month.

"[Signed] H. G. Scott."

The appellee further testified:

"Reducing $1,223,000 life, which goes by the thousands under the contract straight, and $356,000 accident, running 5 into it, and $407 health, counted every $25 as $1,000, counting that $16,000, adding that, the aggregate amounts would give us $1,310,200. That was on the 27th day of December. We pushed for business the last few days. Of course, we got in above those figures; I cannot recall just exactly, but approximately $200,000. I would say not less than $200,000 more after that. In the last two or three days after this, and up to December 31st, we added something like $200,000 to it as I remember. It was $100,000 on the last day. The books here in the office will show that; it was easy $200,000 more."

The appellee, on November 1, 1913, wrote a letter to the agents. This letter was introduced in evidence by the appellant and contained the following statement as to the volume of business procured by appellee up to its date:

"We have closed October, completing our first ten months of the year, with $1,504,950 written life and $523,280 written accident and health, of which we have paid for $991,326 life and $306,200 accident and health."

It further appears from the testimony of the appellee that he requested through correspondence that appellant furnish him a statement showing the business he had written for it, and what he was entitled to, and that such request was refused. Appellee also testified that he tendered his resignation to appellant January 8, 1914, to take effect 30 days afterwards, and that at that time Mr. Allmond was superintendent of agencies and in the Dallas office; that during the month of January, 1914, he requested of Mr. Allmond a number of times permission to look over the books of the company to see how his account stood, and was denied such permission. There is also testimony to the effect that the appellant charged to its several agents who wrote the business, and who were working under the appellee, the premiums to which the appellant was entitled on such business. This is, in substance, the testimony of appellant's supervisor, Harris, who succeeded the appellee, and is not contradicted. Among other things, Mr. Harris said:

"All this business shown on these statements is 1913 business as shown by the books, written in 1913, and paid for or charged, either paid for within 60 days extra allowed for settlements, or charged. * * * The books show that the net amount of the premiums due the company on these policies in this list of business charged was charged to the agent within 60 days following December 31, 1913."

Appellee testified:

"My contention has been all the time, as my correspondence will show, that I was entitled to my cash prizes for the business procured according to the company's acceptance of the business, for the reason that I had no interest whatever in the agents. I believe my contention is right."

The testimony bearing upon the question under consideration is entirely too lengthy to be stated or copied in full in this opinion. That portion of it reproduced here is sufficient, we think, to justify the submission of the issue objected to by appellant, and supports the finding of the jury upon it. This is very clearly true when the testimony is considered in its entirety. If it be true, as appellant argues, that the evidence fails to show what pay appellant received upon business procured within 60 days after the expiration of the year 1913, there was evidence from which the jury might reasonably conclude that the business procured under the terms of the contract, and for which appellant received pay during the year 1913, exceeded $1,250,000, and the language "or within 60 days thereafter," included in special issue No. 1, and the absence of testimony showing what pay appellant received within 60 days after the expiration of the year 1913, or that it received any during that time, furnishes no good reason for a reversal.

[3] At the request of appellant the court submitted the following questions to the jury:

"First. What was the amount of paid business procured by the Texas-Oklahoma Department of the Reliance Life Insurance Company and issued by it during the year 1913?

"Second. What was the amount of business charged, but not paid for in cash, procured by

the Texas-Oklahoma Department of the Reliance Life Insurance Company and issued by it during the year 1913?"

To which questions the jury made the following answer:

"Special issues, requested by the defendant, we cannot answer."

In its second assignment of error appellant asserts that the only issues raised by the testimony were submitted to the jury in these questions, and advances two propositions under the assignment, namely: (1) That it is error to render judgment upon a verdict not answering material interrogatories; (2) that a special verdict, the various findings of which are inconsistent with and in conflict with each other, is insufficient to support a judgment. What we have said practically disposes of this assignment against appellant. Under our construction of the contract sued on, both of these questions called for findings of fact not material to the controversy. The volume of business procured by appellant's Texas-Oklahoma Department, together with appellee's personal business during the year 1913, was the controlling issue in the case, and what the amount was of either "paid business" or "business charged, but not paid for in cash," or the volume of business which had been issued during the year, was immaterial as affecting the amount appellee was entitled to recover. A finding of the facts involved in the questions not being essential to the rendition of a proper judgment, the fact that the jury was unable to answer them furnishes no just ground of complaint, or cause for reversing the judgment that was rendered. This being true, the answers of the jury to question No. 1 submitted by the court, and to the two questions submitted at the request of appellant, involve no such conflict as forbade the court to render the judgment authorized by the answer of the jury to the first issue submitted to them.

[4] The third assignment of error complains of the trial court's action in overruling appellant's motion for a new trial. The contention here is in substance that appellant should have been granted a new trial because the court erred in refusing to permit the defendant to withdraw its announcement of ready and postpone the case to such time later in the term as would enable it to ascertain from its books in the Dallas office the exact amount of business procured by the Texas-Oklahoma Department, together with the plaintiff's personal business, during the year ending December 31, 1913, and settled for within 60 days. The record discloses that the postponement was sought to enable the appellant's witnesses Harris and O'Mara to further investigate the appellant's books and to furnish testimony which they claimed they were then unable to give. Prior to this request the appellant had made a similar request for a postponement and had stated to the court the time desired. That request was granted, and the trial postponed for

2 days. At the expiration of the 2 days the court called upon the appellant for an announcement as to whether it was ready to proceed with the trial. The appellant then stated that it was not ready, and requested a further postponement, for the reason that, although the said witness O'Mara, who was the cashier of the said defendant company at the branch office at Dallas, and also Mr. C. H. Harris, supervisor at said office, both working together continuously since the court had taken its recess, had been unable and had found it impossible to complete their examination of the books and records of the Dallas office, so as to enable them to testify as to what portion of the business procured by the Texas-Oklahoma Department and by Beaton's personal business during the year 1913 had been paid for in cash during said year and within 60 days following December 31st of said year 1913; that said work will probably take several weeks—this statement being testified to by the said H. C. Harris under oath upon the stand in answer to questions put to him by the court and also by counsel. This motion for further postponement of the trial was overruled and the parties required to proceed with the trial. The trial judge in explanation and qualification of the bill of exception reserved by the appellant to his action in refusing to further postpone the trial, among other things, says:

"The court overruled the application for continuance purely on the ground that no diligence of any character had been used to get the data that counsel claimed he wanted. Months having elapsed in which the data, if needed, could have been gotten, the court was of the opinion that he would not be justified, under the law and the facts in this case, with all the facts before the parties at interest for months prior thereto, in granting this continuance. No explanation was ever made of the telegram that was sent from the manager of the home office, and the court was of the opinion that none could ever be made from a showing from the books here. With those facts and circumstances before the court, the court overruled the application for a continuance, and with this explanation approved this bill."

The granting of appellant's request for a further postponement of the trial rested very largely in the discretion of the court, and we would not be warranted in saying, either that the court abused its discretion in that matter, or that upon the showing made a new trial should have been granted. It does not appear that the court acted arbitrarily in either matter, or that the verdict should have been set aside on the ground that appellant will suffer a palpable wrong as a result thereof without fault on his part. If it be conceded that the affidavit of the witness O'Mara, attached to appellant's motion for a new trial, disclosed material testimony which he claimed to have discovered from an investigation of appellant's books, still these books had been in the possession of appellant all the while, and it had been given notice to produce them on the trial. It does not ap-

pear that the defendant was in any manner prevented from having the books before the court and availing itself of such evidence as they might have been able to furnish, and no excuse, so far as we have been able to discover, was given for it not having done so. Furthermore, the witness Harris, offered by appellant, testified upon the trial of the case:

"I am at this time supervisor for the Reliance Life Insurance Company, Pittsburgh. I succeeded Mr. Beaton. I have been connected with the company in that capacity a little over one year. I went in April 15, 1914. The books showing the business written and paid for, for the year 1913, January 1st to December 31st, have been in charge of the office; the entire records since the beginning of the company in Texas. Those books and records are duplicates of the ones kept in the home office at Pittsburgh. I have made a statement from the books that will give the figures that the books would show if they were brought here and gone through. I endeavored to give the entire written business showing paid for in cash and charged. (Witness was handed paper.) This is the statement paid for in cash and also charged business. This was taken from our books in the Dallas office, and is a correct statement to my knowledge. This is a statement showing the business paid for in cash and also the charged business secured by Mr. Beaton during the year 1913. This record was furnished us from the home office record, and checked by our record, as they are duplicates."

If this testimony should be regarded unimportant in passing upon appellant's motion for a new trial, in view of the affidavit of O'Mara, offered in support of said motion, then it may be said that the witnesses Harris and O'Mara each testified in substance that he did not keep the books in the Dallas office during the year 1913, and had no knowledge of those books, except from what he found in the books, and the trial court may have properly concluded that the statements of O'Mara, made in his affidavit attached to appellant's motion for a new trial, with regard to what the books showed as the amount of business procured by appellee, was of little value.

It is clear, we think, that we would not be justified in reversing the judgment of the court below, and it is therefore affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.