**LAKE et al. v. JONES LUMBER CO. et al.
(No. 8533.)**

(Court of Civil Appeals of Texas. Dallas.
May 28, 1921. Rehearing Denied
Oct. 8, 1921.)

1. **Mechanics' liens ⬳317—Materialman's petition against subcontractor's surety held sufficient.**

Materialman's petition against subcontractor's surety alleging subcontractor's indebtedness to materialman for material furnished, and containing subcontractor's bond making all persons furnishing material obligees thereunder, *held* sufficient on demurrer.

2. **Mechanics' liens ⬳317—Contractor's petition against plastering contractor's surety held sufficient.**

Contractor's petition in cross-action against plastering contractor and his surety alleging that plastering contractor in violation of his contract abandoned the work requiring the contractor to complete the work at an expenditure of more than the contract price, and setting out the bond, *held* sufficient on demurrer.

3. **Appeal and error ⬳690(4)—Admission of evidence not considered unless shown by statement of facts.**

The Court of Civil Appeals will not review admission of evidence not shown by statement of facts, notwithstanding reference thereto in bill of exceptions.

4. **Evidence ⬳355(3)—Delivery receipts held competent to show delivery of building material.**

In action for building material furnished, delivery receipts shown to have been made in the regular course of plaintiff's business by duly authorized employé at time of order and to be exact copies of other slips simultaneously made out, used as invoices and as journal sheets for subsequent posting in ledger, and signed by defendant or his agent on delivery of the material, *held* admissible to show delivery of the material.

5. **Appeal and error ⬳721(1)—Record equally binding upon both defendants where assignments of error have been jointly briefed.**

On joint appeal by defendants, who have jointly briefed the assignments of error, the appellate court will not treat certain of the assignments as those of one of the appellants and others as assignments made exclusively of benefit of other appellant, but will consider the record equally binding upon both in all respects.

6. **Appeal and error ⬳882(10) — Appellant held estopped from complaining of exclusion of evidence by reason of testimony of other appellant with whom it had jointly briefed assignments of error.**

In materialman's action against subcontractor and his surety, in which the surety alleged that it had been defrauded by collusion between subcontractor and materialman, and that the materialman was the subcontractor's undisclosed principal, the surety, having jointly appealed with the subcontractor from judgment for materialman, was estopped, by subcontractor's testimony denying such collusion or relationship of undisclosed principal, from complaining of the exclusion of evidence thereof; the record containing such testimony by subcontractor being equally binding on the surety.

7. **Evidence ⬳376(9)—Testimony as to correctness of pay roll held sufficient to warrant admission of pay roll in evidence.**

Testimony that witness signed checks for pay rolls and ascertained that they were correct *held* to warrant admission of pay roll in evidence as against contention that there was no proof of its correctness.

8. **Mechanics' liens ⬳315 — Subcontractor's surety held liable to contractor under subcontractor's bond notwithstanding provisions of subcontracts.**

Subcontractor's surety was liable to contractor to the extent of the penalty recited in subcontractor's bond regardless of the provisions of the subcontract.

9. **Appeal and error ⬳733 — Assignment of error that judgment is contrary to law and is not supported by verdict too general.**

Assignment of error that "the judgment of the court is contrary to the law and is not supported by the verdict of the jury" *held* too general for consideration.

10. **Appeal and error ⬳731(1)—Assignment of error that verdict is contrary to evidence too general for consideration.**

Assignment of error complaining that the verdict of the jury on certain special issues designated by mere number is contrary to the preponderance of the evidence, and not supported by the evidence, without stating the issues themselves or indicating the answer, *held* too general for consideration.

11. **Appeal and error ⬳882(11)—Appellants estopped from denying sufficiency of evidence to support special findings requested by themselves.**

Appellants are estopped from attacking the sufficiency of the evidence to support special findings requested by themselves.

12. **Mechanics' liens ⬳317 — Specific finding as to market value of material not indispensable to judgment for materialman against subcontractor and his surety.**

In materialman's action against subcontractor and his surety for price of material, specific findings as to the reasonable market value of the material was not indispensable to the judgment for materialman.

13. **Trial ⬳356(5) — Answers by jury to questions calling for evidential facts not necessary.**

Jury's failure to answer special interrogatories calling merely for evidential facts *held* not reversible error; such answer not being necessary to a rendition of a proper judgment.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by the Jones Lumber Company against G. E. Lake, the American Surety Company of New York, the Security Mortgage & Investment Company, and the Watson Company in which the two last-named defendants brought a cross-action against the first two named defendants. Judgment for plaintiff and for last-named defendant against the first two named defendants, and the first two named defendants appeal. Affirmed.

Grover C. Adams and Adams & Stennis, all of Dallas, for appellants.

Spence, Haven & Smithdeal and Holloway & Holloway, all of Dallas, for appellees.

HAMILTON, J. This suit was instituted by the Jones Lumber Company against G. E. Lake and his surety, American Surety Company of New York, and also Security Mortgage & Investment Company and the Watson Company, for the recovery of the value of certain building material used in the construction of an addition to a building in Dallas owned by Security Mortgage & Investment Company. The Security Mortgage & Investment Company contracted with Watson Company for the construction of six additional stories upon the building. After the contract was thus made Watson Company subcontracted to G. E. Lake the plastering work on the building. The contracts were both in writing. Lake executed a bond with American Surety Company of New York as surety. By this bond Lake and American Surety Company contracted, among other stipulations, as follows:

"Know all men by these presents: That we, G. E. Lake, as principal, and American Bonding Company of New York, sureties, are held and firmly bound unto Watson Company, as well as all persons, firms, and corporations who may furnish material for or perform labor on the work, building, or improvements contemplated in the contract hereinafter mentioned, their heirs, executors, and administrators, jointly and severally, in the sum of five thousand dollars ($5,000.00) lawful money of the United States of America, for which payment we, the principal and sureties herein, do hereby jointly and severally bind ourselves, our heirs, executors, and administrators, firmly by these presents. * * *

"This bond is made for the use and benefit of all persons, firms, and corporations who may furnish any material or perform labor for or on account of said work, building, or improvement, and they and each of them are hereby made obligees hereunder the same as though their proper names were written herein as such, and they and each of them may sue hereon."

The work of the plastering was begun and carried forward for some time by Lake, but he did not complete it, and it was finished by Watson Company.

Plaintiff alleged that it had furnished all material used by Lake, and that he owed

a balance, after being allowed all just and proper credits, amounting to $2,059.07, for, which both Lake and American Surety Company were liable.

Recovery against Security Mortgage & Investment Company was sought upon allegations that the material supplied Lake was inwrought into its building, and that notice had been given it and verified claim of materialman's lien had been filed in the mechanics' and materialmen's records of Dallas county, all in the manner authorized by law; that concurrent with these events Security Mortgage & Investment Company was owing Watson Company, as the original contractor, for the construction of the addition to the building a sum much in excess of the debt due plaintiff for materials, and foreclosure of the mechanic's and materialman's lien so alleged to exist was prayed for.

Plaintiff alleged as against Watson Company that, when the mechanic's and materialman's lien was fixed against the building, as above stated, Security Mortgage & Investment Company was indebted to Watson Company; that Watson Company had contracted with Security Mortgage & Investment Company indemnifying it against all materialmen's liens and claims. It was also alleged in the same connection that Watson Company was indebted to Lake for material and labor used in constructing the building; and it was further alleged that Watson Company was made a defendant for the purpose of definitely ascertaining the state of the accounts between Watson Company and Security Mortgage & Investment Company and between Watson Company and Lake, and also because Watson Company was particularly named as obligee in the bond executed by Lake and the surety company.

The Security Mortgage & Investment Company and Watson Company filed cross-actions against Lake & American Surety Company of New York, which were practically identical. The cross-action alleged that Lake had violated his contract and abandoned the work, which resulted in Watson Company being compelled to complete it, and that in order to complete it Watson Company had expended $2,631.11 more than the contract price provided for between Watson Company and Lake.

Lake and the surety company answered, excepting generally to the petition and specially excepting to certain allegations, and also denying all the material allegations respectively made against them. The surety company alleged that it was deceived and defrauded by Lake, Watson Company, and plaintiff Jones Lumber Company at the time it became surety, that Watson, Jones Lumber Company, and Lake, knowing that Lake had insufficient assets to enable him to induce it to make the bond, conspired that Jones Lumber Company should turn over

to Lake $3,000 to be deposited in the bank by him and to be included in a financial statement to American Surety Company's agent, and that such acts of deceit were perpetrated and carried out and resulted in the bond being executed, but that no such bond would have been made except for the fraud of the three parties. It was also alleged that the bond, although made in the name of Lake as principal, was the Jones Lumber Company's bond, and that it was the undisclosed principal in the contract with Watson Company signed by Lake and also in the bond. Lake alleged that Watson Company and Jones Lumber Company conspired together to prevent him from completing the work, and also alleged that, if the cost of completing it was more than the contract price, it was because the estimates made by him had not been followed, but had been disregarded. He sought $550 damages against Watson Company and Jones Lumber Company.

Various supplemental pleadings were filed joining issue as between the various parties upon their several contentions, but we do not regard a detailed statement of them essential to our discussion of the case.

The case was submitted to a jury upon special issues. Upon the answers returned by the jury judgment was rendered that the plaintiff Jones Lumber Company recover nothing against Security Mortgage & Investment Company and nothing against Watson Company. From this part of the judgment no appeal was prosecuted. But upon the jury's findings judgment was rendered against G. E. Lake and American Surety Company jointly and severally in favor of Jones Lumber Company for the amount sued for and also against them jointly and severally in favor of Watson Company for the amount alleged in its cross-action to be due. From this judgment Lake and the surety company have appealed.

[1, 2] Those assignments of error which insist that the general demurrer to the amended petition and to Watson Company's cross-action ought to have been sustained, we think, are without merit. These and all other assignments of error are jointly made in behalf of the appellants. The petition and Watson Company's cross-action both fully set forth facts revealing an indebtedness against appellant Lake. The bond is embodied in the petition, and its provisions in connection with the allegations descriptive of the surety company's liability clearly show a cause of action existing against it in behalf of Jones Lumber Company for materials furnished and used on the building in executing Lake's undertaking. The two clauses of the bond above quoted in stating the case are a basis of liability against the surety company under Jones Lumber Company's allegations and also under those of Watson Company's cross-action against appellants. In these circumstances the general demurrer in each instance was properly overruled.

[3] Error is assigned to the effect that the court erroneously admitted as evidence, over appellants' objection, an affidavit and an itemized account attached thereto without any proof that the items of material contained in the account were used in the building upon which work was done. A bill of exceptions duly approved and embodying the proceedings complained of in this assignment is found in the transcript; but we are not referred to any portion of the statement of facts where the evidence is set forth, and so far as we are able to determine from a search of the statement of facts it seems not to contain the particular evidence about which complaint is made. The statement of facts controls, rather than the bill of exceptions, in such situation. Hence, since the evidence is not in the statement of facts, we think the assignment presents nothing for our consideration.

Various assignments of error complain of the admission as evidence of certain records designated as "slips" or "receipts." Without attempting to set forth all the evidence we think pertinent facts are deducible from it which are competent to prove the delivery of all the material, which Jones Lumber Company claimed to have delivered to Lake, and the evidence complained of related to items of material constituting the account upon which plaintiffs' suit was based.

These facts we find were established: That Jones Lumber Company made the deliveries of all the items in response to requests for them from Lake; that, when a load was ordered and set out, at that time a fourfold record was made by Jones Lumber Company in conformity with its regular and usual system of bookkeeping; that each of these records was an exact copy of all the others; that one of the sheets containing the items and other data, such as the date and place of delivery, was a "journal sheet" which was carried forward and posted in the ledger; that one was either mailed to Lake or retained in Jones Lumber Company's office for him as an invoice; that two were put into the hands of the driver of the conveyance used for delivery, and that before the material left Jones Lumber Company's premises the load was checked with reference to the sheets to see that it corresponded with the list contained in the sheet; that when the driver arrived at the place of work the items were checked against the list either by Lake or some of his employés on the ground; and that one of the slips was retained by Lake or such employé, while the other was signed as a receipt for the items delivered and returned to the office of Jones Lumber Company by the driver and there retained with other copies of the record. Some of

the drivers of the delivery wagons testified in detail as to the facts connected with the actual deliveries. Others could not be produced as witnesses, but officers of the Jones Lumber Company testified that the "slips" or "receipts" which were identified as those returned by the drivers who did not testify and which appeared to be signed either by Lake or some other person acting for him went through the same course as those did concerning which drivers did testify, and it was established by the testimony that such signed "slips" or "receipts" could get back into the Jones Lumber Company's possession bearing Lake's signature or that of some one acting for him, only by following the course which characterized the "slips" identified as those delivered by the drivers who did give testimony. Besides, we are not directed to any evidence given by Lake or in his behalf directly challenging the position that the deliveries shown by these records were in fact made. Summers, an officer of the Jones Lumber Company, testified positively that the materials named in these records were delivered at the building for Lake; but it does not appear in any part of his testimony to which our attention has been directed in what manner his knowledge was acquired nor whether or not the reliability of his sources or means of information were questionable.

[4] We think the evidence fairly justifies all these conclusions: (1) That the "slips" or "receipts" were true and exact copies of the other three "slips" or "receipts" simultaneously made, and were tantamount to original entries; (2) that they were entries made in the regular course of business contemporaneously with the transactions to which they related; (3) that they show the transaction in the regular and usual way employed by the lumber company; (4) that they were made in the regular course of business by an agent or employé duly authorized; (5) and that the transactions were all regularly and correctly entered on the records of the company. The rules of procedure governing the introduction of records of accounts followed in Randle v. Barden, 164 S. W. 1063, and in Stark v. Burkitt, 103 Tex. 437, 129 S. W. 343, we therefore think, are not violated in the procedure of which appellants here complain, and all assignments of error raising or relating to such contention are overruled.

All assignments of error complaining of the exclusion and admission of evidence with reference to the alleged fraud, collusion, etc., between Lake and the lumber company have been considered in the light of the record on this feature of the case, and we are of the opinion that they reveal no error requiring us to disturb the judgment. We do not believe the evidence excluded tended to show any fraud or collusion between Lake and any other party to deceive and mislead the surety company, nor did it tend to reflect the existence of any relation between Lake and the Jones Lumber Company which would support the conclusion that Jones Lumber Company was the undisclosed principal or partner for whom Lake acted in negotiating for the bond. The excluded evidence pertained to matters unrelated to and wholly remote from the contention the testimony was intended to establish.

The evidence which the court admitted, over appellants' objections, to combat the charge of fraud, collusion, undisclosed principal, etc., did not merely express opinions and conclusions of the witnesses as asserted by appellants, but stated knowledge of material facts. The questions and their respective answers constituting the testimony objected to were as follows:

"Q. They allege you colluded with the Watson Company to keep him [Lake] from finishing the job and keeping him from making a profit. What did you do with the Watson Company to keep him from making a profit? A. Absolutely nothing. Q. Now, when the contract was made, did you authorize Lake to sign the contract for the Jones Lumber Company? A. No, indeed. Q. When you were reimbursed for that (meaning material bills and money furnished for labor), where was the balance of the $3,000 to go? A. To Guy Lake. Q. Now, did you turn over at any time any check to Lake to make a showing to the surety company in May when he was having his bond executed in March? A. No. Q. At whose instance and request, if any one, did Jones Lumber Company deliver this plaster that you have described in the itemized account to this Huey & Philp job at Elm and Griffin streets? (The answer was that it was delivered at the instance request of appellant Lake.) Q. Supposing there was $1,500 due the plaster company for plaster, and the Watson Company had paid Lake in full, and there was no surety bond, where was the plaster company to get the money—who was responsible to the plastering company for the plaster? A. Jones Lumber Company."

[5, 6] This being a joint appeal prosecuted by appellants Lake and American Surety Company, and the assignments of error being jointly briefed, we do not feel called upon to treat certain of the assignments as those of one of the appellants and others of them as assignments exclusively made for the other's benefit. On the contrary, in conformity with the position of appellants themselves, we have considered every complaint in the brief as one urged with equal interest by both appellants. We also consider the record equally binding upon them in all respects, since they have jointly assailed the judgment under every assignment. Taking this view, it clearly follows that appellants are estopped from complaining, in any event, because proof of circumstances tending to

show collusion between Lake and any other party or proof of the relation of undisclosed principal was excluded, since Lake himself testified with particularity and clearness that no such relations between him and any other party ever existed in connection with the transactions in suit, and that he never heard of any claim to that effect until the pleading alleging such relations was read to him at the trial. His testimony was corroborative of strong and unequivocal evidence in appellees' behalf upon this issue.

We do not think the twenty-seventh, twenty-eighth, and twenty-ninth assignments of error are well founded. They complain that Watson Company's pay roll was admitted in evidence without proof of its correctness; that proof of claims in excess of the amount due Lake on his contract provided that, in case Lake failed to complete the work, Watson Company should be authorized to use the balance of the contract price to complete it; and that proof of "extras" was admitted in behalf of Watson Company. All this was over appellants' objections.

[7, 8] The correctness of Watson Company's pay roll was sufficiently shown by George Watson's testimony. He testified that he signed the checks for the pay rolls and that he ascertained that they were correct. That the provisions of the plastering contract between Watson Company and Lake, looked to exclusive of the bond, might preclude Watson Company from recovering beyond any amount due or to become due Lake, to say the least, is doubted. But, even if it had that effect, when looked to exclusively, yet the bond jointly executed by the appellants fixed the liability of both appellants to the extent of the penalty therein recited for "all sums of money which it (Watson Company) may pay to other persons on account of work and labor done or material furnished which said G. E. Lake may fail to do or furnish in accordance with said contract," etc.

We do not think the evidence of cost of extra material and labor was improperly admitted. George Watson's testimony seems to fairly explain and show that these items were all necessary, and that Lake contemplated them when he made the contract. Watson testified that he was familiar with the pay rolls and knew about the items for overtime. He testified in part as follows:

"In order to explain the overtime, as shown in these pay rolls, when the contract was taken it included the plastering of columns and other portions of the building then standing, four floors. We had to reinforce the columns and plaster the columns and also other plastering connected with the elevator shaft, etc., that came down through parts of the building that were occupied, and it was necessary, and Mr. Lake was familiar with it at the time the contract was taken, that it would be necessary to do that at night, and, although it is almost impossible for me to remember the exact men that worked a certain night, I do know that the extra time allowed these men was for night work done on that portion of the building. These items in the pay rolls are correct and were actually paid by me."

There were records admitted which set out all extra items, and they seem to have been proper. Besides, while we probably do not clearly understand and fully appreciate the effect of certain statements in the record, apparently taken from Watson Company's books, they apparently show that extras were credited to Lake, as contended by appellees. And Watson testified that Lake was given credit for extra labor and material used.

[9, 10] The assignments of error from the thirtieth to the fifty-second, inclusive, are submitted in group. They relate to alleged errors of procedure comprehended in the verdict and judgment. Practically all of them are manifestly too general to impose upon this court the requirement of any consideration. Number 30 is as follows:

"The judgment of the court is contrary to the law and is not supported by the verdict of the jury."

Numerous others are to the effect that the verdict of the jury on certain special issues designated by mere number is contrary to the preponderance of the evidence and not supported by the evidence. The issues themselves are not stated nor are the answers indicated. Sections 24, 25, 26, Rules Texas Courts of Civil Appeals (142 S. W. xii); Bynum v. Hobbs, 56 Tex. Civ. App. 557, 121 S. W. 900; First State Bank v. Jones, 129 S. W. 145.

[11] Besides, some 14 of the issues, the findings upon which are complained about in as many assignments, were specially requested by the appellants themselves. This circumstance estops appellants to deny that a substantial conflict of evidence existed from which such answers and findings should be determined. Having by requesting the submission of such issues recognized the existing of evidence to support a finding against them, appellants are left by the answers of the jury in a position where they may not complain. Poindexter v. Receivers of Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42; Sanford v. Railway Co., 143 S. W. 329.

However, in any event, from the examination we have made of each and all of the assignments contained in this group and from what we have ascertained from our examination and consideration of the record and the proceedings below in connection with other assignments of error, we are not prepared to hold that any of these assignments, however considered, indicate reversible error.

Numerous assignments of error challenge the judgment upon the views, variously stated, that the answers of the jury to different special issues submitted were contradictory of each other and confusing, and that the jury did not make any answers at all to certain material issues submitted.

We believe the answers of the jury, as made, were sufficient to determine the controlling issues in the case, and that they support the judgment rendered. The proof seems fully adequate to establish the amount of indebtedness claimed against appellants both by Jones Lumber Company and Watson Company in conformity with their allegations.

[12] We do not think that such specific findings as the reasonable market value of material supplied to complete Lake's contract and the amount of material supplied by Jones Lumber Company were indispensable to a judgment. And such is the nature of the findings sought by the unanswered questions submitted to the jury.

[13] We are inclined to agree with counsel for appellees in their contention that the questions which were unanswered called for evidential facts. The answers would not have evinced an expression of a conclusion as to what the evidence established with reference to the ultimate facts determining the issues. Accordingly we hold that such answers were not necessary to the rendition of a proper judgment. Insurance Co. v. Beaton, 187 S. W. 743.

The foregoing disposes of all assignments of error, and those not specifically considered nevertheless have been examined and are expressly overruled.

The judgment is affirmed.